No. 23-5704
# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

---

**J.L., ET. AL.**

**PLAINTIFFS.**

**VS.**

**WILLIAMSON COUNTY BOARD OF EDUCATION,**

**DEFENDANT.**

An Appeal from the United States District Court for the
Middle District of Tennessee
(No. 323-cv-00516)
District Judge Trauger

---

# PLAINTIFFS'/APPELLANTS' MOTION FOR STAY-PUT INJUNCTION UNDER THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT PENDING APPEAL

---

**Plaintiffs/Appellants, J.L. and his parents,** move for this stay-put

injunction pending appeal for the reasons that follow.

I. Standard of Review………………………………………………………………..3

II. Summary of Argument……………….…………………………………………4

III. Facts…………………………………………………………………………..5

    A. The "*Honig* Settlement Agreement" of 2020..………………………..6

    B. WCBE Uses Homebound as Stay-Put
       to Prevent J.L. from Returning to In-Person School… ………………8

    C. District Court Rules Out 2019 IEP as Stay Put and Does Not
       Restrain 2020 Homebound As J.L.'s Stay Put………………………..10

IV. Argument…………………………………………………………………….11

    A. The IDEA's Stay Put Provision and Its (k)(4) Carve Out for Safety
       Concerns…………………………………………………………………11

    B. Stay-Put Is Not Waivable………………………………………………16

    C. There Is No Agreed-Upon Stay-Put Placement *Other than*
       the 2019 IEP……………………………………………………………18

         1. District Court Cannot Change the Parties' Stay-Put Contract….20

         2. Nothing Else is Left to Qualify as J.L.'s Stay Put Placement …...22

    D. Indefinite Homebound of Only Three Hours Per Week as
       STAY-Put Must be Restrained Because of J.L.'s Likelihood of
       Success and Harm to J.L….…………………………………………23

V. Conclusion ……………………………………………………………….......25

# I.    STANDARD OF REVIEW

The stay-put provision of the IDEA, 20 U.S.C. §1415(j), affords the Plaintiff an "automatic injunction," but it differs from the traditional Fed. R. Civ. P. 65 injunction analysis. *N.L. v. Springboro Cmty. City Sch. Dist.*, 2019 U.S. Dist. LEXIS 88269, *7-8 (S.D. Dist. Ohio 2019)(citing *Drinker by Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 864 (3d Cir. 1996)).

To invoke the stay-put provision, a party must show that "(1) proceedings under the IDEA are pending; and (2) prevention of a change in the 'then-current educational placement' of the child is sought." *N.L.*, 2019 U.S. Dist. LEXIS 88269 at *8 (citing *D.C. v. Oliver*, 991 F. Supp. 2d 209, 213 (D.D.C. 2013) (citing § 1415(j))).  If that occurs, the burden to overcome the stay-put placement by showing likely injury is shifted to the school district. *N.L.,* at *8. "Ultimately, '[i]n any suit brought by parents seeking injunctive relief for violation of [the stay-put provision], the burden rests with the school district to demonstrate that the educational status quo must be altered." *Id. (citing Honig v. Doe,* 484 U.S. 305, 328 n.10 (1988)).

Prior to filing their appeal, pursuant to Fed. R. App. P. 8(a)(2)(1)(A)(ii), Plaintiffs moved for a stay of the District Court's decision, (D.E. 29), with the District Court denying the relief. (D.E. 33). This Court reviews the District Court's

*legal conclusions* about stay-put placement de novo and its factual findings for clear error. *Castillo v. Whitmer*, 823 Fed. Appx. 413, 415 (6th Cir. 2020).

## II.  SUMMARY OF ARGUMENT

"Stay-put" under the IDEA is neither a child's trap nor a school district's weapon. Owing to a likely legal mistake about the stay-put exception for teacher/student safety, the parties entered a temporary 2020 "*Honig* Settlement Agreement." That *Honig* Settlement Agreement removed J.L. to a Homebound setting with only three hours instruction per week and no behavioral supports.

Ever since, whenever J.L. seeks to return to his zoned public school at WCBE, WCBE claims his stay put placement is Homebound for only three hours instruction per week under the 2020 *Honig* Settlement Agreement. That cannot be. His stay-put placement is regular education, with behavioral supports. *N.W. ex rel. J.W. v. Boone Cnty. Bd. of Educ.*, 763 F.3d 611 (6th Cir. 2014). And if WCBE has concerns, Congress *already* created balanced stay-put exceptions for student attendance and teacher-student safety. Even for guns, drugs, and serious bodily injury, a child only can be excluded from school to a maximum 45 days in an interim alternative placement. 20 U.S.C. §1415(k)(1)(G); 34 C.F.R. 300.503(g).

## III.   FACTS[1]

J.L. is a student in Williamson County, Tennessee, born in 2010, now thirteen years old. (D.E. 27, District Court Memorandum, p. 3).  He is eligible for special education under the IDEA for his diagnoses of Disruptive Mood Dysregulation Disorder (DMDD)[2] and ADHD. (*Id.*)

**"His most recent agreed-upon formal IEP—finalized on September 5, 2019—reflected this placement" in regular education**. (*Id.*)(emphasis added) That IEP placed him in the regular education classroom "to the fullest extent" where he was able to participate with his peers.  (J.L. Decl., at No. 1, September 5, 2019 IEP, p. 14; Final Order, FF # 16, p. 5). Most, but not all, of his special education services for social/emotional behavior were delivered in "general education." (*Id.* at p. 14).  That IEP also provided J.L. with both a Functional Behavior Assessment (FBA) and Behavior Intervention Plan (BIP). (*Id.* at p. 3)

---

[1]    Except where noted, the facts are taken from the District Court's Memorandum denying Plaintiffs' motion for stay-put. (D.E. 27).

[2]    DMDD is a newer DSM-V disorder, beginning in 2013, to more accurately diagnose youth with bipolar disorder. See https://www.nimh.nih.gov/health/publications/disruptive-mood-dysregulation-disorder (last visited August 9, 2023)

## A.    The "Honig Settlement Agreement" of 2020

In 2019, WCBE questioned whether his placement "could safely continue, in light of J.L.'s history of sometimes-violent outbursts." (D.E. 27, District Court Memorandum, p. 3).   But first, J.L.'s parents filed a due process complaint to maintain his placement and invoke "stay-put." (*Id.* at 4).

With J.L. filing first, WCBE believed a hearing officer must revoke J.L.'s stay-put in regular education. On March 6, 2020, it filed a "*Honig* Due Process Complaint" for the "safety of teachers and peers." (*Id.*; D.E. 10-3 (Due Process Complaint)). It asked a hearing officer to *relieve* WCBE "from its obligation to maintain J.L.'s stay-put placement at [Bethesda Elementary School] during the pendency of litigation." (D.E. 10-3, p. 8, "III. Proposed Relief, 2.").

On June 26, 2020, the parties entered a Settlement Agreement known as the "*Honig* Settlement Agreement." (D.E. 5-7). Both parties agreed J.L. would be "place[d] ... in a temporary homebound placement until a final order is issued [on J.L.'s due process complaint], or until the parties enter into a settlement agreement

resolving all disputes [on J.L.'s due process complaint]." (D.E. 27, District Court Memorandum, p. 4).[3] Thus, it was intended for a limited duration and purpose.[4]

On October 14, 2020, J.L.'s first-filed due process complaint was resolved by settlement, thus concluding the Homebound placement from June 26, 2020 to October 14, 2020. (D.E. 27, Memorandum, p. 4). In this settlement, WCBE agreed to pay for Robson Academy, a satellite of Faith Christian Academy, for a limited time period. *Id*.[5] This settlement agreement also included a disclaimer that Robson Academy would *not* be the "stay-put." (D.E. 27, Memorandum, p. 4)(D.E. 8-6, at p. 4)).

Robson Academy proved not a good fit. Robson Academy could not manage J.L.'s overall behavior as a middle-schooler, which it said included flipping tables, ripping paper, swearing, fleeing class, and hitting the teachers. (*Id*. at 5). Thus, J.L.

---

[3]    Under disability-related conduct, under no circumstance could J.L. have been removed for more than 45 school days. See, e.g., 20 U.S.C. §1415(k)(1)(G).

[4]    As WCBE advised the District Court: "While Plaintiffs are correct that the *Honig* Settlement was for a limited purpose, that purpose was to provide J.L. access to an education while awaiting a decision on Plaintiffs' litigation against WCBOE." (D.E. 31, WCBOE Response, p. 8).

[5]    Such private placements are permissible under the IDEA. 20 U.S.C. §1412(a)(10)(B)(i). Robson Academy no longer exists in Williamson County.

finished that year in an online program and then sought to return to his zoned public school at WCBE. (*Id.*)

## B. WCBE Uses Homebound as Stay-Put to Prevent
## J.L. From Returning to In-Person

In August of 2021, now a sixth grader, J.L. sought to return to WCBE. On August 5, 2021, WCBE prevented his in-person return, claiming that Homebound from the 2020 Honig Settlement Agreement (three hours per week) was his stay-put placement. (*Id.*)

J.L. filed Due Process to invoke the last fully agreed upon IEP placement— regular education with supports—from September to December 2019 IEP. (D.E. 27, Memorandum, p. 6) (citing D.E. 5-8)). WCBE filed a motion with the administrative law judge to determine stay-put, with both parties briefing the matter. However, the ALJ asked J.L. if he would *volunteer* to agree to the three hours of Homebound as stay put. (*Id.*). J.L., through counsel, said no. (*Id.* (citing 8-12, at p. 1)). Thereafter, the ALJ never ruled, permitting WCBE to maintain only three hours per week of Homebound, with no behavioral supports, as the stay-put.

Five months later, March 18, 2022, still without a ruling on stay-put, and still banned from attending school in-person, J.L.'s family learned of a new school, Galileo Academy, which purported a "flexible learning format." (*Id.* at 7). J.L. voluntarily withdrew the existing due process *without prejudice to its refiling* and

unilaterally placed J.L. at Galileo for the 2022-2023 school year. (*Id*. at 7) (citing D.E. 5-9).

Now in seventh grade, Galileo Academy was better than Robson Academy but it lacked behavioral supports that a public school possesses, and it enjoyed no federal funding. (*Id*. at 7). Intending to move, J.L. completed one semester at Galileo. (*Id*. at 7). Instead of moving, in December of 2022, J.L. sought for a second time to return to his zoned public school at WCBE. (D.E. 27, Memorandum, p. 7).

Once again, the parties again disputed placement—WCBE would not allow any peer access at all, and only a reduced four hours per day in an "independent workspace." (*Id*. at 7).

On March 23, 2023, J.L. refiled his due process complaint. He claimed violations of stay put for both 2021 (D.E. 5-10, DP Complaint, ¶¶11, 14, 15), and 2023 (¶10). As it had done previously, WCBE maintained that Homebound from the 2020 Honig Settlement Agreement was the stay-put. As shown below, J.L.'s placements to this point were:

| September 2019-December 2019 | **Regular Education IEP** with behavioral supports. (D.E. 27, Memorandum, p. 3) |
|---|---|
| June 26, 2020 "*Honig* Settlement Agreement" | "**Temporary Homebound** placement until a final order is issued or until the parties enter into a settlement agreement" for J.L.'s pending due process complaint. (*Id*. at 4) |

| October 14, 2020 | Mutual Agreement of **Robson Academy**, but this "does not create a "stay put." (D.E. 27, Memorandum, p. 5) |
| March of 2021 | Parents briefly *unilaterally* enroll J.L. in **online**. (*Id.*) |
| August 3-5, 2021 | WCBE says **Homebound** from the 2020 Honig Settlement Agreement is stay-put. (*Id.* at 6) |
| 2022-2023 | Parents *unilaterally* enroll in **Galileo Academy**. (*Id.* at 7) |

At this due process, the hearing officer said stay-put was an "interesting issue" since the last agreed upon IEP was in 2019. (*Id.* at 8-9). However, The ALJ found that stay-put was "waived" when J.L.'s parents placed him at Galileo. (*Id.* at 9). J.L. appealed to District Court.

### C. District Court Rules Out 2019 IEP as Stay-Put and Does Not Restrain 2020 Homebound As J.L.'s Stay Put

J.L. filed an appeal to the District Court and sought a temporary injunction to invoke stay-put placement from the last agreed upon IEP (September-December 2019). WCBE *again* maintained that, if stay-put applied, "homebound is J.L.'s stay-put placement." (D.E. 8, Response, p. 7). By this time, WCBE had taken this position about stay-put ever since August of 2021.

On July 12, 2023, the District Court denied Plaintiffs' motion by finding that the 2019 IEP is *not* J.L.'s stay-put placement. (D.E. 27, Memorandum). That Order seemed to imply that the Homebound for three hours per week under the "Honig Settlement Agreement" *was* the stay-put: "J.L.'s last such fully agreed-upon

placement was his homebound placement…." (D.E. 27, Memorandum, p. 14). (*Id.*) "Although that placement was not in an IEP, it was still reached through the ordinary IDEA process—specifically through a settlement." (*Id.*).

Plaintiffs sought reconsideration or stay of that ruling pending an appeal. (D.E. 29). Walking back any inference that Homebound *was* the stay-put, the District Court said it "*might* qualify" (emphasis in original), but that the Court was not being called upon to answer this question. (D.E. 33, Memorandum, p. 5). Perhaps not appreciating the Congressional exceptions to stay-put for safety, the District Court said it "will not roll the dice with the safety of WCBE's teachers and other students" on the preliminary injunction. (*Id.* at 6). Thus, WCBE maintains its position that J.L.'s stay-put placement is Homebound under the Honig Settlement Agreement.

## IV. ARGUMENT

### A. The IDEA's Stay Put Provision and Its (k)(4) Carve-Out for Safety Concerns

The "stay-put" provision of the IDEA provides:

*Except as provided in subsection (k)(4),* during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

20 U.S.C. § 1415(j) (emphasis added).

The "Honig Settlement Agreement" of 2020, which introduced the three hours per week of Homebound to begin with, was borne of a legal mistake. The lawyers at the time *thought* that a "Honig injunction" must be entered by an ALJ to remove J.L.'s stay-put rights. "WCS filed a *Honig* injunction (the 2020 due process) complaint asserting that leaving J.L. in the stay-put placement was substantially likely to result in injury to J.L. or others." (D.E. 8, WCBE Response, p. 3; see also, D.E. 10-3, Honig Due Process, p. 8., "III. Proposed Relief" ("injunctive relief from its obligation to maintain J.L.'s stay-put placement at BES during the pendency of litigation.")).

It is true that *Honig v. Doe,* 484 U.S. 305 323, (1988) *rejected* a "dangerousness exception" to the IDEA's "stay-put provision." *Id.* at 317.[6]  Instead, for normal situations, school district should "use of study carrels, timeouts, tension, or the restriction of privileges." *Id.*  And in "more drastic" situations, the school district may suspend for up to "10 school days" to protect safety through a "cooling down" period. *Id.*  After the expiration of 10 days, if an alternative agreement is not reached,

---

[6]     At the time, what is now the IDEA was the "Education of All Handicapped Children's Act (EHA).

the school district may "invoke the aid of the courts under §1415(e)(2)" for appropriate relief. *Id.*[7]

Importantly, Congress responded to the *Honig* decision with the 1997 Amendments to the IDEA and the (k)(4) exception stated in §1415(j). Congress struck "a careful balance between the LEA's duty to ensure that school environments are safe and conducive to learning for all children, including children with disabilities, and the LEA's obligation to ensure that children with disabilities receive a free appropriate public education." 67 Fed. Reg. 15830, 15833.

Under the 1997 Amendments, if a child violates the district's code of conduct, stay put does *not* apply under §1415(j) and its §1415(k)(4) carve out. See *Olu-Cole v. E.L. Haynes Pub. Charter Sch.*, 930 F.3d 519, 524 (D.C. Cir. 2019); *see also* 34 C.F.R. §300.518(a).

The "*Honig* Settlement Agreement" of 2020 did not appreciate the carve-out. So the parties created a temporary Homebound situation to avoid stay-put. But at least it was for a limited period of time (June to October 2020). In August of 2021, when WCBE informed J.L. his stay-put was Homebound, it reneged on the

---

[7] Justice Scalia dissented. To Justice Scalia, both Doe and Smith cases were moot because, even if Smith did return to school, it was "quite unlikely" the school would use a setting that "could not control his dangerous conduct." *Id.* at 338.

limitation. It claimed Homebound from the 2020 *Honig* Settlement Agreement still applied.

In 2020, 2021, and still today, were J.L. to return to the regular education classroom with behavioral supports (like the 2019 IEP), and WCBE fear a likely injury, WCBE could use (1) the *Honig v. Doe* techniques ("study carrels, timeouts, tension, or the restriction of privileges") OR (2) *unilaterally* suspend him or *unilaterally* place him in an "interim alternative educational setting" for up to 10 school days. 1415(k)(1)(B); 34 C.F.R. 300.530(b)(1).

And *even if* his conduct were a manifestation of his disability, any misconduct involving weapons, drugs, or serious bodily injury authorized WCS to *unilaterally* remove him for 45 school days. *Id.* at §1415(k)(1)(G); 34 C.F.R. 300.503(g); *Olu-Cole*, 930 F.3d at 524. And even *beyond* the unilateral 10 days, and the unilateral 45 days for weapons, drugs or serious bodily injury, WCBE could also file its own expedited due process for fear of a "likely" injury and still remove J.L. to an interim placement. *Id.* at §1415(f)(1)(A); 34 C.F.R. §300.532(b)(2); *Olu-Cole*, 930 F.3d at 524. In every single scenario, stay-put does not apply. *Id.* at §1415(k)(4); 34 C.F.R. 533; *Olu-Cole*, 930 F.3d at 525.[8] J.L. would be removed to the interim facility.

---

[8]     In 2020, in its "Honig Due Process Complaint," WCBE invoked §300.532(a) and asked the hearing officer to *relieve* WCBE "from its obligation to maintain J.L.'s

But what WCBE cannot do is claim J.L.'s stay-put placement is only three hours per week instruction on homebound for a lengthy litigation, with no behavioral supports. That is more severe than the Congressional balancing scheme for disabilities and student discipline wherein, no matter what, J.L. cannot be removed for *more than 45 days*. 20 U.S.C. §1415(k)(3)(B)(ii)(I),(II); 34 C.F.R. §300.532(b)(2)(i),(ii). To do that, WCBE would have to renew the process if it still thought injury was likely. 34 C.F.R. §300.532(b)(3)).

The District Court may not have appreciated how stay-put already contains a safety-related carve-out. Acknowledging *its own fears* arising from the record WCBE has presented, the District Court observes that J.L. "is neither the only student nor the only person involved in this situation." (D.E. 33, Memorandum and Order, p. 6). That is certainly true. However, the District Court worries that re-integrating J.L. will "roll the dice with the safety of WCBE's teachers and other students." (*Id.*).

It won't. Balancing the rights of students having mental health conditions with teacher-student safety is *not* a matter left to chance ("roll the dice"). The Congressional balancing scheme already affords *WCBE* unilateral rights to remove J.L., as necessary, under the (k)(4) exception. He must be returned to school under

---

stay-put placement at BES during the pendency of litigation." (D.E. 10-3, p. 8, "III. Proposed Relief, 2.").

the proper stay-put placement: the last agreed upon IEP of regular education from 2019.

The District Court was not called upon to judge the wisdom of the careful Congressional balance nor *create* a stay-put placement. "[A] court does not define a student's educational placement when it issues a stay-put order. Instead, a 'student's current pendency placement is the educational placement in the student's last agreed-upon IEP.'" *Simpson-Vlach v. Mich. Dep't of Educ.*, 2023 U.S. App. LEXIS 11542, at *13-14 (6th Cir. May 10, 2023)(citing 20 U.S.C. § 1415(j); *N.W. ex rel. J.W. v. Boone Cnty. Bd. of Educ.*, 763 F.3d 611, 617-18 (6th Cir. 2014)).

The District Court's ruling that the 2019 IEP is not stay-put, and its failure to restrain Homebound for three hours per week, cannot stand for three legal reasons: Stay-Put Is Not Waivable; the September 2019 IEP is the *only* agreed upon stay-put placement; and Homebound presents a continuing harm in violation of Tennessee's Homebound laws. Each is addressed in turn.

### B.    Stay-Put Is Not Waivable

Stay put applies "particularly [to] emotionally disturbed students." *Honig v. Doe*, 484 U.S. 305, 323 (1988); *Olu-Cole v. E.L. Haynes Pub. Charter Sch.*, 930 F.3d 519, 524 (D.C. Cir. 2019). "Section 1415(j) represents Congress's policy choice that

all handicapped children, regardless of whether their case is meritorious or not," may invoke stay put. *C.K. v. Bd. of Educ. of Sylvania City Sch. Dist.*, 2022 U.S. App. LEXIS 25360, \*67 (6th Cir. 2022).

"Waiver" of stay put, a protection of the child, is not possible absent explicit agreement:

> [N]othing in [our cases] interprets the stay put provision as suggesting that parents can lose their stay put protection except by affirmative agreement to give it up. … In any event, even assuming that in a proper case the stay put provision can be waived, we find nothing in the record here that leads us to believe that this is such a case.

*Drinker by Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 868 (3d Cir. 1996).

In the Sixth Circuit, placing a child in private school is not a waiver of stay put—particularly where, as here, the school district said, in 2021, that homebound was stay-put. In *N.W. ex rel. J.W. v. Boone Cnty. Bd. of Educ.*, 763 F.3d 611 (6th Cir. 2014), the parents placed the student in a private school *beyond* an agreed-upon period of a mutual settlement. *N.W.* , 763 F.3d at 617-18. That act did not waive stay put, it just returned stay-put to the public-school placement from years earlier. *Id.*

The District Court queried, in its reconsideration order, whether stay-put may be lost through subsequent placement in a private school, citing *Michael C. ex rel. Stephen C. v. Radnor Twp.* Sch. Dist., 202 F.3d 642, 646 (3d Cir. 2000). (D.E. 33, Memorandum, p. 4).  However, *Michael C.* involved a child who had moved from a

different *state,* which the Court distinguished "from the situation in which a parent unilaterally removes a child previously determined to be disabled from one school district and moves the child to another school district in the same state." *Id.* at 649. "In the latter situation, the child's educational placement has already been determined in accordance with state procedures and with the consent of the child's parents, and his or her IEP bears the imprimatur of that state." *Id.*

## C.   There Is No Agreed-Upon Stay-Put Placement *Other than* the 2019 IEP

The District Court should not have made a piece-meal decision about stay-put—deciding the 2019 IEP is *not* stay put, but not deciding what *is* stay put. It is important to restrain the *harmful* stay-put of Homebound for three hours per week.

Much of the District Court's discussion focused on its belief that "this dispute is about the definition of "current." (D.E. 27, Memorandum, pp. 15-16). However, the statute uses the modified phrase "*then*-current," 20 U.S.C. § 1415(j), and neither the 2019 IEP nor the 2020 "*Honig* Settlement Agreement" is current. Thus, the Sixth Circuit has more aptly used the phrase "the educational placement in the student's last agreed-upon IEP." *Simpson-Vlack v. Mich. Dep't of Educ.*, 2023 U.S. App. Lexis 11542, at *13-14 (6th Cir. 2023). And in *N.W.*, the Sixth Circuit looked to 34 C.F.R. §300.116(b) to distinguish its prior understanding of "placement," from *Thomas v. Cincinnati Bd. of Educ.*, of "the operative placement actually

functioning at the time the dispute first arises." *N.W. ex rel. J.W. v. Boone Cnty. Bd. of Educ.*, 763 F.3d 611, 617 (6th Cir. 2014).

Plaintiffs have never said "placement" means "an arrangement must be memorialized in an IEP" or that it must include "every requirement touched on by 34 C.F.R. §300.116(b)." (D.E. 27, Memorandum, p. 14; D.E. 33, Memorandum, p. 3)). Rather, Plaintiffs assert that, *in this case*, the last approved "placement" is, in fact, memorialized in the September – December 2019 IEP. Contrary to the District Court's suggestion, there are no other "interim" agreements. (D.E. 27, Memorandum, p. 16).

In *N.W.*, the Sixth Circuit ruled, in 2014, that an IEP from several years earlier, 2007, was the last agreed upon IEP, not a subsequent private placement that the parents *unilaterally* sought to extend. *N.W. v. Boone Cty. Bd. of Educ.*, 763 F.3d 611, 617 (6th Cir. 2014). The Sixth Circuit rejected the parents' argument that a private placement, ABS School, could remain the stay-put *beyond the contracted period* of time. *Id.* at 613. Stay-put returned to "St. Rita's" in 2007. *Id.* "[C]lassifying St. Rita's as N.W.'s placement comports with the statute and regulations, and it eliminates the alleged absurdity." *Id.* at 618.

The District Court suggests, but does not rule, that the temporary 2020 Honig Settlement Agreement, might constitute the stay put because it was "fully agreed

upon" and it "was still reached through the ordinary IDEA process—specifically, through a settlement." (D.E. 27, Memorandum, p. 14; D.E. 33, Memorandum, p. 5)(it "*might* qualify")(emphasis in original).

But that is not legally possible—unless the District Court changes the parties' limited and defined contract in the 2020 *Honig* Settlement Agreement. Like the private placement at ABS in *N.W.* was for a *defined* contractual period and then expired, *N.W.*, 763 F.3d at 613, so too was 2020 *Honig* Settlement Agreement. It was to last only "until a final order is issued [on J.L.'s due process complaint], or until the parties enter into a settlement agreement resolving all disputes [on J.L.'s due process complaint]." (D.E. 5-6 at 1, "*Honig* Settlement").

### 1.    District Court Cannot *Change* the Parties' Stay-Put Contract

Certainly, parents and the school district can "agree" to make a change to stay-put. 20 U.S.C. §1415(j). But that is different than *changing* the agreement after-the-fact. In 2020, as WCBE admits, the parties' agreement was Homebound but only "*while awaiting a decision on Plaintiffs' litigation against WCBOE.*" (D.E. 31, WCBE Response, p. 8). Like in *N.W.*, *supra,* the parties' agreement to ABS school was for a limited period.

The parties' use of an event, rather than a calendar date, to conclude J.L.'s time on Homebound was appropriate. The parties did not know a calendar date. But

the *event* date was clearly written in the *Honig* Settlement Agreement: "until a final order is issued, or until the parties enter into a settlement agreement…." (D.E. 5-6, ¶1). The lawyers at the time believed this was necessary to resolve "stay put," temporarily, "during the pending of the due process [filed by J.L.]." (*Id.* at ¶9).[9]

In *Stanley C. v. M.S.D. of Southwest Allen County Schs.*, 2008 U.S. Dist. LEXIS 45708 (N.D. Ind. 2008), a stay-put placement agreement was reached until "the matter is resolved, *either resolution by the parties or by order of the IHO.*" *Id.* at *23 (emphasis in original). That was a sufficient end-time to preclude stay-put from attaching further: "By agreement then, the parties established an end-date for the payment by Defendants-either resolution by the parties or by order of the IHO." *Id.*

Similarly, in *Verhoeven v. Brunswick Sch. Committee,* 207 F.3d 1 (1st Cir. 1999), the First Circuit found that a District Court may not *change* the purpose of a stay-put agreement because that changes the status quo.

> The preservation of the status quo ensures that the student remains in the last placement that the parents and the educational authority agreed to be appropriate. However, in the case of P.J.'s temporary placement at SMLC, Brunswick and the Verhoevens never agreed that P.J. would be placed at SMLC beyond June 1, 1998. To the contrary, the parties expressly agreed that P.J. would only be placed at SMLC during the 1997-98 school year. Therefore, to maintain P.J. at SMLC during the pendency of the Verhoevens' challenge would actually change the

---

[9] The lawyers at the time did not understand that stay-put does not even *apply* where the school district is concerned about misconduct and teacher safety. §§1415(j), 1415(k)(4). The (k)(4) carve-out permits unilateral actions by WCBE.

agreed-upon status quo, not preserve it. Thus, because a reading of "current educational placement" that includes the temporary SMLC placement at issue here would thwart the purpose of section 1415(j), we decline to adopt such a reading.

*Verhoeven v. Brunswick Sch. Comm.*, 207 F.3d 1, 10 (1st Cir. 1999); see also, *Leonard v. McKenzie*, 276 U.S. App. D.C. 239, 869 F.2d 1558 (D.C. Cir. 1989)("the Leonards were on notice that the Lab School would cease to be the "current educational placement" once the 1985-86 school year ended").

Of course, enforcing a contractual limitation on stay-put runs both ways. As in *N.W.*, a *parent* cannot extend private school payments beyond a contractual limitation either. That is "not the type of maintenance of the status quo that section 1415(j) envisions." *G.M. v. Drycreek Joint Elem. Sch. Dist.*, 2010 U.S. Dist. LEXIS 136187, *4 (E.D. Cal. 2010)(denying stay put for student's choice of private school).

### 2. Nothing *Else* is Left to Qualify as J.L.'s Stay-Put Placement

As the chart illustrates, there are no other placements after the *Honig* Settlement Agreement that could qualify as agreed-upon stay-put placement. An agreed-upon private placement like Robson Academy, as opposed to unilateral parental placement, does require provision of an IEP from the public school, 20 U.S.C. §1412(a)(10)(B)(i); 34 C.F.R. §300.325(c). However, in 2020, the Settlement Agreement *disclaimed* that stay put would be Robson Academy. (D.E. 8-6). WCBE has never agreed on placement since.

**D.     Indefinite Homebound of Only Three Hours Per Week as Stay-Put Must Be Restrained Because of J.L.'s Likelihood of Success and the Harm to J.L.**

Unlike the traditional preliminary injunction analysis, the stay-put provision of the IDEA, 20 U.S.C. §1415(j), affords the Plaintiff an "automatic injunction." *N.L. v. Springboro Cmty. City Sch. Dist.*, 2019 U.S. Dist. LEXIS 88269, *7-8 (S.D. Dist. Ohio 2019).[10] There is no burden on J.L. to show irreparable harm by a denial of the stay-put injunction. *Olu-Cole v. E.L. Haynes Pub. Charter Sch.*, 930 F.3d 519, 529 (D.C. Cir. 2019). That "heavy" and "difficult" burden lies with the school district. *Id.*

Even under a traditional preliminary injunction analysis, as Plaintiffs advised the District Court, Plaintiffs are likely to succeed because indefinite Homebound as stay-put violates Tennessee's homebound statute and harms J.L. (D.E. 32, Plaintiffs' Reply, p. 4). Homebound education is limited to students who are certified by physicians as having temporary medical conditions that prevent them from attending classes. Tenn. Code. Ann. §49-10-1101.

---

[10]     The District Court believed a traditional preliminary injunction analysis applied to a stay of its own denial of the preliminary injunction. The District Court seemed to place the burden on *Plaintiffs* of showing J.L. could be safe in his return to school: "The plaintiffs, however, have made no showing that J.L. can be safely integrated into a general education classroom...." (D.E. 33, Memorandum, p. 6).

The State Department of Education is expressly charged with promulgating regulations to implement this statute. *Id.* at §49-10-1103. Every thirty days, the IEP Team must ensure appropriate instruction and continuation of homebound placement. Tenn. Reg. 0520-01-09-.07(2)(c). These are not waivable requirements.

The lawyers at the time of the "Honig Settlement Agreement" used Homebound outside the statute, but at least they did so for a limited duration. But now, the District Court has permitted WCBE to extend Homebound indefinitely as the stay-put. (D.E. 8, WCBE Response, pp. 8-9).

The United States Department of Education limits homebound. When using homebound for discipline, the IEP team "likely will need to consider other options beyond 'home instruction" when determining an appropriate [interim alternative educational setting.]" Office of Special Education and Rehabilitative Services, *Questions and Answers: Addressing the Needs of Children with Disabilities and IDEA's Discipline Provisions, Question D-5* (2022), available at https://sites.ed.gov/idea/files/qa-addressing-the-needs-of-children-with-disabilities-and-idea-discipline-provisions.pdf. The factors include length of removal, bearing in mind the 45 day maximum period. *Id.* Moreover, denying behavioral supports could deny FAPE. *Id.*

Three hours of medical homebound is "futile," "without any hope of success," and "impossible" to receive behavioral interventions and meet IEP goals. *Id.* at \*4-5. *Hawkins County Bd. of Educ.*, 35 IDELR 23, 101 LRP 165 (TN SEA 2001).[11]

Even a placement on homebound for 22 days has been held to undermine an IEP and deprive the student of FAPE. *Community Consolidated Sch. Dist. #93 v. John F.*, 33 IDELR 210, 33 LRP 9955, No. 00-CV-1347 (N.D. Ill. 2000).[12] "The homebound placement also failed to address [the student's] social and emotional needs." *Id.* at \*15. Even if the Court were to assume … dangerousness, the homebound placement provided "virtually no educational benefit." *Id.* at 17.

## V. CONCLUSION

To sum up, the District Court's error about stay-put must be stayed during this appeal *so that* J.L. may return to school under the 2019 IEP, with his behavioral supports. There is no roll of the dice, as Congress already has provided by statute for a safety-exception to stay-put in these precise situations.

---

[11]     IDELR is the Individuals with Disabilities Education Law Reporter which publishes administrative law decisions.

[12]     This case is cited by *B.H. v. W. Clermont Bd. of Educ.*, 788 F. Supp. 2d 682, 695 (S.D. Ohio 2011).

| GILBERT LAW, PLC | THE SALONUS FIRM, PLC |
|---|---|
| /s Justin S. Gilbert | /s Jessica F. Salonus |
| Justin S. Gilbert (TN Bar 017079) | Jessica F. Salonus (Tn Bar 28158) |
| 100 W. MLK Blvd, St 501 | 139 Stonebridge Boulevard |
| Chattanooga, TN 37402 | Jackson, TN 38305 |
| Telephone: 423.756.8203 | Telephone: 731.300.0970 |
| justin@schoolandworklaw.com | jsalonus@salonusfirm.com |

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the undersigned hereby certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i). As provided in Federal Rule of Appellate Procedure 32(f), the brief contains 4,976 words. This brief has been prepared in proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Equity font.

/s Jessica F. Salonus

## CERTIFICATE OF SERVICE

I certify that the foregoing Motion has been filed via the Sixth Circuit Court's electronic filing procedures, including to defense counsel, Deanna Arivett and Angel McCloud, on this 11th day of August 2023.

/s Jessica F. Salonus